## ELEANOR B. WEEKS
*v.*
## THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

*Opinion filed October 25, 1902.*

1. PRACTICE—*Appellate Court not required to recite evidentiary facts in judgment of reversal.* In reversing a judgment at law, without remanding, because it finds the facts differently from the trial court, the Appellate Court is not required to recite the evidence or to find the mere evidentiary facts, but only to find the ultimate facts.

2. SAME—*when Appellate Court's recital is a sufficient finding of facts.* In reversing a judgment in a personal injury case, a finding by the Appellate Court, in its judgment, that "the injuries received by appellee were not caused by reason of the negligence of appellant and that appellee was injured by reason of her own want of ordinary care," is a sufficient finding of facts and is conclusive upon the Supreme Court, where plaintiff's care and defendant's negligence were controverted questions of fact.

3. SAME—*when Appellate Court is not precluded from finding facts differently from trial court.* Even if there is no controversy over the facts proved, admitted or agreed upon, yet if different conclusions of fact may be drawn from the evidence, the Appellate Court is not precluded from rendering a different judgment from the trial court on the facts.

*Chicago and Northwestern Ry. Co.* v. *Weeks,* 99 Ill. App. 518, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This case comes into this court upon appeal from the Appellate Court for the First District. The plaintiff, Eleanor B. Weeks, recovered a verdict in the superior court of Cook county against the Chicago and Northwestern Railway Company for $10,000. Upon this verdict judgment was rendered, and upon appeal to the Appellate Court the judgment was reversed without remanding the cause.

On May 17, 1898, Eleanor B. Weeks, the appellant, was a young woman twenty-four years of age. She was

taking a post-graduate course in a school of elocution
and oratory at Evanston, near Chicago. Her home was
in a suburb of St. Louis. She had relatives living in
Ravenswood, a station on the Chicago and Northwestern
railway, between Evanston and Chicago. She had vis-
ited her relatives once before, since the elevation of the
tracks of the Northwestern railroad, and was not sure
where she took the train or left it on her previous visit.
Aside from this she was not familiar with the Ravens-
wood station, platform, stairways and general surround-
ings at that point. At this time the railway company
had elevated its tracks between Chicago and Evanston.
The Ravenswood station was located half way between
Sunnyside avenue and Wilson avenue, these streets be-
ing five hundred and seventy-five feet apart. A platform
extended the full length of this block on each side of
the track. The depot, and its shed or covering for the
protection of passengers, was located on the east side.
A stairway connected the station directly with the street.
There was no covering or station of any sort on the west
side,—simply a platform used by people in getting off
and on the trains. There was no way over the track from
the depot to the west side except to cross the track. At
this depot there were three tracks: the west track, then
used for running trains north; the east track, for running
trains south, and the center track, not then being in use.
There was then no fence or obstruction between these
tracks, and passengers were in the habit of going across
the tracks indiscriminately, between these two points,
on taking or leaving trains. At Sunnyside avenue a sub-
way was built under these tracks. This sub-way had
two stairways, one leading up to the east platform, the
other to the west platform. These stairways immedi-
ately joined the stone abutment on which the viaduct
was placed. The lower step was built level with this
stone abutment. On going west under the sub-way one
could see the first stairway but could not see the stair-

way upon the west side of the tracks, and there was nothing, by way of sign or notice, to inform one seeking to use this stairway that there was another stairway further on which could be used.

The Northwestern railway ran two classes of suburban trains,—express trains that ran from Chicago to Evanston without making a stop, and local trains stopping at all stations on the way. At that time the express trains and the local trains ran upon the same track. They were alike as to general construction and appearance, differing only in the manner in which they were run. Trains going north ran upon the west track, those going south upon the east track. At this time an express train left the Chicago depot at 5:20, running forty miles an hour and running past the Ravenswood station at this rate of speed, not stopping until it reached Evanston, some miles beyond. A local train also left Chicago at 5:20, immediately after the express train, and making three stops before reaching Ravenswood. This train was scheduled to reach Ravenswood and let off and take on passengers at 5:40 P. M., which was just five minutes after the express train passed which ran over the same track and left Chicago at the same time.

On the 17th day of May, 1898, Eleanor B. Weeks had purchased a return ticket from the Chicago and Northwestern Railway Company at Evanston and had gone to Ravenswood to visit her relatives, who live several blocks east of the track. She intended to return on the local train leaving the Ravenswood station at 5:40 P. M. About 5:15 Miss Weeks, accompanied by her cousin and another young woman, left the house and went leisurely down to the station, stopping at several shops along the street. They had no time-piece but knew that the train was due at 5:40, and started from the house and made their stops with reference to this time. In this way they reached the corner of Sunnyside avenue and East Ravenswood Park, which is a street sixty-five feet wide

immediately east of the railroad's right of way. The girls stopped for a few moments on the sidewalk on the east side of this street and were there talking together. Thereupon Miss Weeks looked up and saw a train approaching from the south, just coming into view. She turned to her companions and said, "There comes my train." They replied that she had plenty of time to get the train, whereupon she started across the street and up the stairway, being the first one she reached and in plain view from the street, and thence to the platform on the east side of the track. At this point she suddenly hesitated, looked toward the south, saw the train approaching a block or more distant, still supposed that this was her train, and started to cross the track in a diagonal direction north-west, expecting to reach the west platform at about where the train would stop. But the train proved to be the fast express running at the rate of forty miles an hour. As she approached the last track the whistle blew sharply. She looked up, was frightened and hastened to get across, tripped, and fell in the middle of the track. She had sufficient presence of mind to pull herself across the track and upon the platform on the opposite side of the track, but too late to prevent the train from running over her ankle, thus rendering the amputation of her leg necessary. The engineer saw her as she hastened across the track, he then being more than one block north of Montrose boulevard. He gave a signal,—a whistle,—which apparently she did not hear, and ran the train another block, within forty or fifty feet of where the girl was, when he gave another signal and at the same time put on his brakes and turned off the steam, but it was too late to prevent the accident.

DARROW & THOMPSON, for appellant.

A. W. PULVER, (LLOYD W. BOWERS, and S. A. LYNDE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

In reversing the judgment without remanding the cause the Appellate Court made this finding of facts: "The court finds that the injuries received by appellee were not caused by reason of the negligence of appellant, and that appellee was injured by reason of her own want of ordinary care." The first count of the declaration charged that the plaintiff was injured by the defendant while she was crossing its tracks at a public crossing. Other counts charged that she was a passenger of the defendant, and that she was injured by reason of the failure of the defendant to use the care required of a common carrier of passengers for their safety.

Counsel for appellant have contended here, with much earnestness and at great length, that the finding of facts made by the Appellate Court is not sufficient, in view of the pleadings and the evidence, to preclude this court from finding, as a matter of law, from the evidence, that appellant was a passenger of appellee when she was injured and that appellee failed to exercise the care required of it for her safety, or, at least, that it was the duty of the Appellate Court to find, under the issues, whether appellant was such passenger or not, to the end that this court might determine whether the law had been properly applied by the Appellate Court to such finding of facts. We are unable to agree with counsel on this question. Let it be supposed that the Appellate Court had found that appellant was, in fact, a passenger; still, if the court further found that her injury was not caused by any negligence of appellee, but was caused by her own failure to use ordinary care for her own safety, there could be no recovery. Even as a passenger her cause of action was based on the alleged negligence of defendant, which negligence, while she was using due care (as such passenger) for her own safety, operated to cause the injury. The Appellate Court is not required

to recite the evidence or to find the mere evidentiary facts, but only to find the ultimate facts. (*Rogers* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 115.) In the case cited, and in *Borg* v. *Chicago, Rock Island and Pacific Railway Co.* 162 Ill. 348, the finding of such ultimate facts was not more specific, but was substantially the same as the finding in the case at bar. We have no doubt that the finding was sufficient, under the statute and the decisions of this court, upon which to base the judgment which the Appellate Court rendered.

Nor can we agree with appellant's counsel that the facts were uncontroverted, and that from such uncontroverted facts the appellee's liability appears as a conclusion of law. It was clearly a controverted question of fact whether appellant used due care for her own safety in crossing the railroad track in front of the approaching train; and this would be so even if she sustained the relation to appellee of passenger. It was equally a controverted question of fact whether appellee was guilty of negligence in the running and management of its train under all of the circumstances, and the power to find and settle such controverted questions of fact is vested in the Appellate Court, and not in this court; and this is so in cases even where it may appear to us that an erroneous view has been taken of the evidence by the Appellate Court. It is not, of course, meant to be said that had the evidence been such that under the decisions of this court and the rules which have been established it would have been the duty of the trial court to direct a verdict for the plaintiff, the Appellate Court would have had the power to find the facts differently from what the record showed them to be, (if such a finding could be imagined,) and by such finding preclude a review in this court, for by the 87th section of the Practice act the judgment of the Appellate Court in such cases is made final and conclusive only "as to all matters of fact in controversy in such cause." If there is no

controversy "as to matters of fact in the case," (and matters of fact include all inferences of fact deducible from the facts proved,) then the question of law remains for final review in this court, when properly preserved and presented, whether the judgment is erroneous or not on the uncontroverted facts in the case,—and it is only upon this view of the case that we can consider as applicable the argument of appellant's counsel that this court can go behind the finding of facts of the Appellate Court, and determine from the evidence contained in the record whether or not it supports the judgment of the Appellate Court. No case has ever arisen, to our knowledge, nor can we suppose that one ever will arise, where the Appellate Court has found, or will find, the facts to be different from what they were found in the trial court, where there was no controversy as to such facts nor as to the inferences of fact to be drawn from the facts proved, admitted or agreed upon. Cases have arisen where, from a state of facts agreed upon, the Appellate Court has drawn conclusions of fact different from those of the trial court, and has in consequence rendered a different judgment. (*Seeberger* v. *McCormick*, 178 Ill. 404.) But in the case at bar, as we have seen, the question whether the plaintiff was exercising proper care for her own safety in crossing the track in front of appellee's approaching train was, under all of the circumstances, one of fact; and so, also, was the one whether appellee's engineer, seeing appellant starting across the track in front of his engine, was guilty of negligence in not bringing his engine under such immediate control as to prevent the collision. It is not denied that he gave signals of warning, nor that the plaintiff persisted in her attempt to cross, thinking, no doubt, that the train was the one she intended to take, and that it would approach the station slowly and come to a stop there,—an erroneous conclusion of her own. The power to finally determine the facts in such a case is vested in the Appellate Court, and we cannot

review such finding. There is no contention that the judgment of the Appellate Court is not the proper one on the facts as found, and it appearing that the finding made is legally sufficient, no other question is open for review in this court.

The judgment must be affirmed.

*Judgment affirmed.*