## Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Nancy K. Alfred, Admx.

1. Instructions—*must not assume facts in dispute.* An instruction which assumes the plaintiff's theory to be true and the defendant's untrue, is erroneous.

2. Instructions—*must not be argumentative.* An instruction which is suggestive, argumentative and persuasive, is improper.

3. " At the time of his death "—*construed.* This phrase, used in an instruction, notwithstanding the fact that the date of the death of plaintiff's intestate was five days after the accident, held, not misleading, and to have clearly referred to the time of the injury.

4. Opinion evidence—*when, incompetent.* An opinion as to the existence or non-existence of a substantive fact in dispute is, ordinarily, incompetent, and the refusal of the court to strike out the statement of an opinion is in effect a statement to the jury that they may consider such opinion, and is, therefore, erroneous.

Action on the case for death caused by alleged wrongful act. Appeal from the City Court of Mattoon; the Hon. Lapsley C. Henly, Judge, presiding. Heard in this court at the November term, 1903. Reversed and remanded. Opinion filed March 16, 1904.

George F. McNulty, for appellant; Andrews & Vause, of counsel.

Edward C. and James W. Craig, Jr., for appellee.

Mr. Justice Gest delivered the opinion of the court.

This is an action on the case charging that defendant

negligently caused the death of Joseph Alfred. Deceased was fatally injured at the Twenty-fourth street crossing of defendant's railroad, in Mattoon, between ten and eleven o'clock on the night of September 27, 1901, and died four or five days later. Deceased with a companion, George Cunningham, had been that evening to a dance where they remained about an hour, as mere spectators. The place of the dance was about two blocks distant from the Twenty-fourth street crossing of the railroad. After leaving the dance they came to a point on Twenty-fourth street, about twenty-five yards south from the railroad, when freight train No. 54 came along going east. Deceased said, "Let's go up town." Cunningham said, "No, I am going home." Deceased said, "Let's go and get that train and go up town." Cunningham further says: "And we both started towards the train; I caught it and went up town. When I last saw him (deceased) he was twenty-five yards away going towards that train." Cunningham got on the caboose of that train, then going at ten to twelve miles per hour. Another freight train, No. 62, was then about fifteen hundred feet west of Twenty-fourth street and going east at the rate of ten to fifteen miles per hour. Very shortly after No. 62 passed east over Twenty-fourth street, deceased was found lying on the north side of the north main track about ten feet from the east line of the street. A spot of blood, the size of a silver dollar, was found on the south guard rail of the south track. An impression appeared in the dust ten or twelve feet east of that blood spot, and from that point of impression the blood trailed north across the track to where he was found. His right leg was torn open and the flesh crushed below the knee to the foot, and the foot split open. Deceased's home was on Twenty-fourth street, five blocks north of the crossing. There was an elevator standing on the west side of Twenty-fourth street near to the street and the railroad. There were five tracks that crossed Twenty-fourth street—the two main tracks about the center of the right of way, two switch tracks south of the main tracks, and one switch track

north.  Some cars were standing west of the street on these switch tracks, both north and south of the main tracks.  There was no sidewalk over the crossing on either side of the street but there was planking in the center. The ordinances of Mattoon prohibited speed of freight trains beyond six miles per hour.  The evidence tended to show that the engine bell was ringing on both trains.  The engineer and fireman of No. 62 say they were looking east and saw no one on Twenty-fourth street  No. 62 was a long train, fifty-three cars; it stopped at the I. C. crossing east of Twenty-fourth street, and when that stop was made the caboose would be about on Twenty-fourth street.  It was a bright moonlight night.  There was no eye-witness of the accident.  No one saw deceased after Cunningham last saw him until after the accident.  The court admitted proof as to deceased's character for carefulness.  He was twenty years of age and sober.

The first count of the declaration avers in general terms that the injury was caused by the careless and negligent running of the train; the second count is based on the alleged failure to ring the bell or blow the whistle; and the third count upon unlawful speed.  Upon the trial of the cause the theory of the plaintiff was that deceased was struck by the engine of No. 62 while he was passing along the street over the crossing.  The theory of the defendant was that he attempted to board the train and fell, his foot being caught by the wheel and his lower limb thus crushed.

At the conclusion of plaintiff's evidence in chief and again at the conclusion of all the evidence, defendant, in due form, requested the court to instruct the jury to find for the defendant.  The court refused to so instruct, and this is assigned as error.  We have carefully read the abstract and portions of the record, and our conclusion is that no error was committed by the court in this regard.  There was evidence tending to establish plaintiff's case.  It would serve no useful purpose to review that evidence.  There are twenty-one assignments of error.  Of these, counsel in their argument discuss four.  As the remaining seventeen are not

deemed by counsel to be of sufficient importance to justify them in presenting their views of law and fact thereon for the aid of this court, we do not feel called upon to investigate them ourselves to ascertain if perchance some one or more should be sustained.

Complaint is made by defendant of instructions given on behalf of plaintiff. We think this complaint is, in some particulars, justified. The tenth instruction reads in part: " The court further instructs you that Joseph Alfred when he went upon the crossing," etc. It appears to us that this language assumes that deceased was upon the crossing in the act of or for the purpose of passing over. It assumes the plaintiff's theory to be true and the defendant's to be untrue. It would almost necessarily work injuriously to the defendant.

We find no such error in the ninth instruction given for plaintiff as counsel seek to show. The first, fourth, fifth, eighth and ninth instructions given for plaintiff are criticised because, as is said by counsel, " they do not require the deceased to have used ordinary care at or just before the time he was injured, but only require him to use such care at the time he was injured." The first and ninth use the phrase " at the time of his death " which took place five days after the injury; doubtless the jury understood them as if they read " at the time of his injury." The fourth, fifth and eighth do not use the phrase complained of. In any event, the jury were not misled by the phrase. That language means, to the ordinary reader and when not subjected to hypercriticism, on the occasion of his injury. Moreover, in the ninth instruction asked by defendant and given by the court the precise words " at the time he was injured " are used with reference to the same question of care by deceased. A party cannot complain of an instruction given for his opponent, when he asks for and obtains the same for himself.

The sixth instruction given for plaintiff was as follows:

"The court instructs the jury that if you believe from preponderance of the evidence that Joseph Alfred had been to

a platform dance with George Cunningham, and that they started up Twenty-fourth street together, and when they reached a point about twenty-five yards south of the railroad crossing on Twenty-fourth street that George Cunningham left Joseph Alfred and said, ' I am going home,' and started off to board a train then on the east side of Twenty-fourth street, and that Joseph Alfred when last seen by George Cunningham was walking up Twenty-fourth street towards the track, and that said Alfred did not follow Cunningham in his attempt to board the train that Cunningham did, and that Cunningham was the last man to see said Alfred before he was hurt, then and in that case you will have a right in determining what then took place to take into consideration all the circumstances proven on the trial. You will have a right to and must consider where the said Joseph Alfred lived, if shown by the evidence; whether or not if he was going with George Cunningham he could have taken the same train that he did; whether they knew about this second train; and to further take into consideration the direction Alfred was thrown, if you believe the evidence shows that he was thrown by such train, and direction he was thrown, the marks made upon the ground, whether they were made by the body of Alfred, and whether the attention of an ordinarily careful person would have been drawn from the second train to the one Cunningham boarded, and must also take into consideration the instinct of self-preservation which every man has, together with the proof of the character of this young man for carefulness and prudence, if there be any such proof, and also the proof as to his character for sobriety and industry, if there be any such proof."

No defense can be made of this instruction. It is suggestive, argumentative and persuasive for the plaintiff; it states largely the evidence favorable to plaintiff, and leaves out everything unfavorable. It avails nothing to the defendant to state in such an instruction that they should consider *all* the circumstances proven on the trial.

The witness Abel had testified that he saw an impression of some kind in the dust at the time he found deceased; he was then asked by plaintiff what it looked like, to which he replied, " It looked just like some man had hit in the dust." Defendant moved the court to strike out the answer which was refused. We think the motion should have been

allowed.   The answer in substance was, that, in the opinion of the witness, the deceased had in some manner been thrown and had landed in the dust, producing a scooped appearance therein.   The court by refusing to strike out the answer told the jury they might consider the witness's opinion.

The only remaining error which is discussed by counsel is, that the answers of the jury are in disregard of the evidence and show the prejudice of the jury.   Upon this subject counsel say:   "These answers showed this jury cared nothing for the evidence and deliberately pushed it aside. Such jurors are the cause of the increasing prejudice against trial by jury."   This statement of counsel is wholly unwarranted by the record.   There is nothing therein tending to show that the jury were to any extent actuated or influenced by either passion or prejudice.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*