### Quincy Gas & Electric Company, et al., v. Thomas O'Donnell.

1. Reversal without remandment—*when will be ordered.* The
Appellate Court will reverse a judgment in an action on the case for
personal injuries without remandment where it finds as a fact that the
defendants were not guilty of the negligence charged.

Action on the case for personal injuries.    Appeal from the Circuit
Court of Adams County; the Hon. Albert Akers, Judge, presiding.
Heard in this court at the May term, 1905.    Reversed, with finding of
facts.    Opinion filed November 24, 1905.    Rehearing denied December
22, 1905.

Govert, Pape & Govert, for appellants.

Wilson & Wall and Joseph A. Roy, for appellee.

Mr. Presiding Justice Puterbaugh delivered the opinion
of the court.

This is an action by appellee against appellants to recover
damages for injuries received by him while in the employ
of appellants.    A trial in the Circuit Court resulted in a
verdict for plaintiff for $1,500, upon which, motions for a
new trial and in arrest of judgment having been denied,
judgment was entered.    To reverse said judgment this ap-
peal is taken.

The declaration to which the general issue was pleaded
contains six counts.    Appellee bases his right to recover
upon the fourth, fifth and sixth counts.

The fourth count alleges that defendants were lawfully

excavating a trench in one of the public streets of the city of Quincy, and had employed the Menke Company to blast deposits of rock which were encountered by the defendants in making such trench; that the Menke Company had no right either by virtue of its charter, or by permission from the city, to excavate or blast in the streets of the city of Quincy, but were exercising, with the assent of the appellants, one of the charter powers and privileges of appellants; that the appellee was a servant of said appellants, and while in the exercise of ordinary care for his own safety was injured by and through the carelessness of the servants of the Menke Company in overcharging with dynamite the holes drilled in the rock to be blasted.

The fifth count is substantially the same as the fourth in all its features, except as to the negligence therein charged. It charges, in substance, that the servants of the Menke Company negligently and carelessly failed carefully and properly to cover said holes or said blast with logs, etc., but negligently caused said explosive substance to be exploded without carefully and properly covering said holes or blast, etc.

The sixth count charges the appellants with negligence in failing to give appellee sufficient warning of the blast as to enable him to reach a place of safety before the explosion took place.

At the close of all the evidence a motion to instruct the jury to return a verdict for the defendants was interposed and overruled.

The record discloses substantially the following facts: In September and October, 1903, appellants were engaged in business in Quincy, Illinois, under the same management. They were, at that time, engaged in laying steam heat pipes upon and along Jersey street from the foot of Front street east towards Third street. When the trench reached a point on Jersey street just east of Front street limestone was encountered, which arose gradually from Front street, and appellants procured from the Menke Stone Company a steam drill and a crew to do the drilling and blasting nec-

essary to remove the same. On the day of the accident, appellee was at work with a hand drill, in the wake of the steam drill, widening the ditch when necessary, and blasting such stone as had not been already dislodged by the steam drill. At the time the accident occurred, the trench had been cleared to a point about 250 feet east of Front street, and appellee was at work in the trench about thirty feet west of the steam drill.

The blast which occasioned the injury to appellee consisted of nine or ten holes, from four and a half to five feet deep, ranged in rows of three each across the trench, with the center hole somewhat further west than the others; the holes nearest the open face of the stone on the west being loaded with three-quarters of a pound of dynamite and the holes further east with from a pound and a quarter to a pound and a half each. The holes nearest the west face of the rock were about a foot to a foot and a half from the edge thereof at the top and from two to three feet at the bottom, the breast of the stone sloping to the west as it neared the bottom of the trench. About two feet east of these holes was a second row and about two feet east of the second row was a third, all of which were wired and the charge of dynamite therein fired from an electric battery, standing to the southeast of the blast and out of line with the trench. Before the charges were fired sand was poured into these holes above the dynamite and the entire upper surface of the rock covered with railroad ties. One timber was placed near the west end of the rock to be blasted and at right angles to the line of the trench. Resting upon this at the west end and upon a rock ledge to the east, railroad ties were placed parallel with the line of the ditch and completely covering the upper face of the stone, the west face, fronting the open ditch, being left without protection.

When the blast was discharged a large quantity of broken fragments of stone was thrown violently down the hill to the west and somewhat to the north of the ditch, coming mostly from the upper part of the rock blasted, one piece

of considerable size striking the plaintiff in the small of the back and injuring one of his kidneys seriously. Another piece struck one Royal Clark, who was standing just east of appellee, and threw him to the ground. Several pieces were thrown across Front street, much further than in any previous blast made in this trench. Before the blast was made the west face of the rock appeared solid, but when the debris was cleared away a perpendicular seam was disclosed in the rock, about a foot below the upper surface, running well toward the west face and from thence eastward clear across the blast and cutting off the stone to the north from the block or section being blasted.

The evidence shows that it is the tendency of dynamite to go downward and then to seek the weakest point; but that it usually explodes upward when its downward course is checked, and if a seam occasions weakness on one side of the hole it seeks an outlet in that direction.

Appellants contend that the judgment should be reversed for the reason that the evidence is insufficient to establish the negligence charged in either count of the declaration.

The fourth count avers that appellants "carelessly and negligently loaded said holes with an overcharge of dynamite, and then and there exploded the same, while overcharged." In support of said count appellee testified that the blast in question threw fragments of stone much further than had previous blasts, and that an unusually loud report followed the explosion. This was substantially all the evidence tending to support the count in question. No further proof was introduced which tended to show that the amount of dynamite inserted in each hole was excessive under ordinary circumstances. In fact, appellee in his testimony admitted that had he had charge of the holes he would have used the same quantity of dynamite that was in fact used. Even if it could be said, that inasmuch as the blasting apparatus was under the sole control and management of the defendants, and the accident was such as, in the ordinary course of things, would not have occurred if the defendants had used ordinary care, the rule *res ipsa*

*loquitur* applies; we are, nevertheless, of opinion, that the undisputed proof introduced by the defendants to the effect that the grade and quantity of dynamite used would not have ordinarily been improper or excessive under the circumstances, and the further proof that a latent seam or fissure existed in the limestone formation, not discoverable by the exercise of ordinary care, was the cause of the unusual explosion and the casting of a greater number of fragments of rock a greater distance than would have been the case had the formation been solid, is sufficient to overcome any presumption of negligence created by the rule referred to.

We are, therefore, of opinion that if the verdict was predicated upon the fourth count of the declaration, it is clearly unwarranted by the evidence.

The negligence charged in the fifth count is that appellants failed carefully and properly to cover said holes or said blast with logs, ties, or other suitable material, properly weighted down. The only evidence in the record as to the necessity of covering the west face of the blast or as to the manner in which it should have been covered, is that of the plaintiff himself. He testifies substantially, that in his opinion, based upon his experience in blasting, the proper, usual and customary way to cover the blast, in view of the location of the street and the other surrounding circumstances, would be to set the ties on top and at the end of and in front of the blast, and to then put heavy weights upon them; that the purpose of covering it in front would be to keep the rocks from flying west; that the purpose of the blast was not to loosen the rock, but merely to crack it, leaving it to be loosened by prying it out. Opposed to the testimony of appellee, upon this question, is that of James Trout, George Metzger, and Paul Neuser, all of whom appear to have been experienced quarrymen, who testify that the purpose of blasting similar to that in question, is both to loosen the stone and to throw it out of its position in the trench; that to accomplish this an open face is necessary; that to attempt to cover the blast and weight

it down on all sides would defeat the end in view; and that it is customary among quarrymen to cover the top of the blast only.

The greater weight of the evidence manifestly fails to show that appellants were negligent in the method employed in covering the blast, as charged in the fifth count.

The sixth count avers that appellants negligently caused the rock to be blasted without giving appellee such reasonable warning as to afford him, by the exercise of reasonable care, time or opportunity to find a place of shelter or safety before said explosion was made.

The evidence shows that preparatory to firing, notice was given by the foreman, Berger, calling the word "fire" two or three times, which warning was repeated along the trench by the men working there; that all of the workmen, except appellee, upon hearing the warning, sought various places of safety, several of them going into an adjacent alley about 100 feet away, which proved to be a place of absolute safety; others to the foot of Jersey street on the south side thereof. On the northeast corner of Jersey and Front streets was situated a building known as the "Egg-O-See" warehouse. James Trout testified that when the warning was given he and appellee were working together in the trench; that four or five minutes thereafter the explosion occurred; that witness and appellee, after receiving warning, got out of the trench and walked straight west to the "Egg-O-See" warehouse and stopped; that appellee sat down by a lumber pile on the north side of the warehouse, and that the last witness saw of him he was still sitting there looking toward the blast. John Finckle testified that when the first warning was given he saw appellee crawl out of the trench and go down to the lumber pile and sit down by it; that two or three minutes thereafter the explosion occurred and a rock from the blast struck appellee, causing him to fall over the lumber pile. Robert Flight testified that prior to the explosion he saw appellee standing at the west end of a pile of planks south of the warehouse. George Dumrauf, foreman for appellants, testified that he saw ap

pellee get out of the trench about a minute after the warning was given; that he went to the lumber pile, backed up against it and sat down; that about three minutes thereafter he saw the rock coming and started to run west, when he was struck by it. Royal Clark testified that he was in the trench with Trout and appellee; that when the alarm was given he and appellee got out of the trench and went to the lumber pile; that four or five minutes elapsed between the alarm and the discharge; that they had been standing at the lumber pile three or four minutes when the explosion occurred; that when appellee was struck he was standing looking toward the blast. Fred Berger, who operated the battery which ignited the blast, testified that he saw appellee before he fired; that he was about 140 feet away standing at the side of the lumber pile looking in the direction of the blast. Appellee testified that at the time of the explosion the steam drill was a little over 200 feet from Front street; that immediately prior thereto he was working at the bottom of the ditch about sixty or seventy feet west of the steam drill; that he did not hear the cry of the foreman, but was warned of the impending blast by a fellow-workman who was with him; that he then climbed out of the ditch and started west towards Front street; that he, looking backward, saw that the west face of the rock to be blasted was not protected; that he then walked fast towards Front street and had gotten within twenty-five or thirty feet therefrom and about 200 feet from the blast when he was struck; that the explosion occurred within one and a half or two minutes after he left the ditch. On cross-examination he testified that he did not stop from the time he left the ditch until he was struck; that he was going around the corner on Front street believing that to be the safest place, but did not have time to get there; that to his knowledge or memory he did not stand or sit down by the lumber pile. This was substantially all the evidence upon this point.

While the stories of the various witnesses are not in accord in all respects, we are of opinion that the only fair

inference which can reasonably be drawn therefrom, is that appellee had ample time after leaving the trench to have reached a place of absolute safety, but that miscalculating the distance to which the fragments of rock would be thrown by the explosion, he stopped at the lumber pile and awaited the explosion, believing that to be a safe place, and that upon seeing the rocks coming toward him, he started to run and was struck and injured. We are satisfied that the averments of the sixth count are not sustained by the greater weight of the evidence.

No complaint is made in argument as to the rulings of the trial court upon the evidence or instructions.

The foregoing views render it unnecessary to consider or determine the other questions urged and discussed.

In the exercise of the power conferred by section 87 of the Practice Act, which includes the right to reverse a judgment without remanding a cause, where the weight of the evidence manifestly does not authorize the verdict rendered (Borg v. Ry. Co., 162 Ill. 348; City of Spring Valley v. Coal Co., 173 Ill. 497; Seeberger v. McCormick, 178 Ill. 404; Davis v. Chicago Edison Co., 195 Ill. 31; Weeks v. Ry. Co., 198 Ill. 551; Supple v. Agnew, 202 Ill. 351; Trakal v. Heusner Baking Co., 204 Ill. 179), we are constrained to reverse the present judgment without remanding.

*Reversed.*

Finding of facts, to be incorporated in judgment of the court:

We find that appellants were not guilty of the negligence charged in the declaration or either count thereof.

We further find that at the time appellee received the injuries charged in the declaration, he was not in the exercise of due care for his personal safety.