Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. Nancy K. Alfred, Administratrix.

1. RES JUDICATA—*when judgment of Appellate Court is.* The judgment of the Appellate Court in a cause is *res judicata* of the questions decided and is binding both upon the lower court and upon the Appellate Court in a subsequent appeal.

2. VERDICT—*when set aside.* A verdict will be set aside on appeal where it is clearly against the weight of the evidence.

Action on the case for death caused by alleged wrongful act. Appeal from the City Court of Mattoon; the Hon. LAPSLEY C. HENLEY, Judge. presiding. Heard in this court at the May term, 1905. Reversed, with finding of fact. Opinion filed November 24, 1905.

GEORGE F. McNULTY, for appellant; ANDREWS & VAUSE, of counsel.

EDWARD C. and JAMES W. CRAIG, JR., for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action on the case by appellee, as administratrix of the estate of her deceased son, Joseph Alfred, against appellant, to recover damages, under the statute, for negligently causing his death.

Upon the last trial there was a verdict against appellant for $1,000, a voluntary *remittitur* by appellee of $25, and judgment on the verdict, after *remittitur*, for $975. The case was before this court at a former term, when the judgment then recovered against appellant for $2,000 was reversed and the cause remanded for error in giving instructions and in the admission of evidence. 113 Ill. App. 236.

The evidence upon the last trial was in substantial accord with that introduced upon the first trial, and we adopt the statement of facts in our former opinion, as follows:

"Deceased was fatally injured at the Twenty-fourth street crossing of defendant's railroad, in Mattoon, between ten and eleven o'clock on the night of September 27, 1901, and died four or five days later. Deceased with a companion, George Cunningham, had been that evening to a dance where they remained about an hour, as mere spectators. The place of the dance was about two blocks distant from the Twenty-fourth street crossing of the railroad. After leaving the dance they came to a point on Twenty-fourth street, about twenty-five yards south from the railroad, when freight train No. 54 came along going east. Deceased said, 'Let's go up town.' Cunningham said, 'No, I am going home.' Deceased said, 'Let's go and get that train and

go up town.' Cunningham further says: 'And we both started towards the train; I caught it and went up town. When I last saw him (deceased) he was twenty-five yards away going towards that train.' Cunningham got on the caboose of that train, then going at ten to twelve miles per hour. Another freight train, No. 62, was then about fifteen hundred feet west of Twenty-fourth street and going east at the rate of ten to fifteen miles per hour. Very shortly after No. 62 passed east over Twenty-fourth street, deceased was found lying on the north side of the north main track about ten feet from the east line of the street. A spot of blood, the size of a silver dollar, was found on the south guard rail of the south track. An impression appeared in the dust ten or twelve feet east of that blood spot, and from that point of impression the blood trailed north across the track to where he was found. His right leg was torn open and the flesh crushed below the knee to the foot, and the foot split open. Deceased's home was on Twenty-fourth street, five blocks north of the crossing. There was an elevator standing on the west side of Twenty-fourth street near to the street and the railroad. There were five tracks that crossed Twenty-fourth street—the two main tracks about the center of the right of way, two switch tracks south of the main tracks, and one switch track north. Some cars were standing west of the street on these switch tracks, both north and south of the main tracks. There was no sidewalk over the crossing on either side of the street, but there was planking in the center. The ordinances of Mattoon prohibited speed of freight trains beyond six miles per hour. The evidence tended to show that the engine bell was ringing on both trains. The engineer and fireman of No. 62 say they were looking east and saw no one on Twenty-fourth street. No. 62 was a long train, fifty-three cars; it stopped at the I. C. crossing east of Twenty-fourth street, and when that stop was made the caboose would be about on Twenty-fourth street. It was a bright moonlight night. There was no eye-witness of the accident. No one saw deceased after Cunningham last

saw him until after the accident. The court admitted proof as to deceased's character for carefulness. He was twenty years of age and sober."

It is difficult to determine definitely from the evidence of the witness Cunningham, what the location of train No. 54 was with reference to the Twenty-fourth street crossing at and immediately before the time he boarded the caboose, and in our view of the case that fact is of controlling importance as bearing upon the question whether the deceased was injured while attempting to board that train or by the engine of train No. 62. Referring to the location of the train with reference to that crossing at the time, Cunningham said he left deceased about twenty-five yards south of appellant's track for the purpose of boarding it. He was asked, "And where was this train you got on," and he replied, "About three or four cars passed on the crossing." Appellant insists that this statement of the witness means that only three or four cars of the train had then passed the crossing, while appellee insists that it means that the caboose was three or four car-lengths past the crossing when witness boarded it. It will be observed that the question relates to the location of the train and not of the caboose. Further, on cross-examination, Cunningham was asked, referring to his boarding the caboose, "Where were you before you jumped on," and he replied, "Standing by the side of the car." This to our minds clearly indicates that Cunningham reached the crossing at Twenty-fourth street while the train was still crossing that street and before the caboose had reached the crossing, and that he was there standing waiting for the caboose.

Upon the trial appellee claimed the evidence tended to show that the deceased was struck by the engine of train No. 62 and so received the injuries resulting in his death, while appellant claimed the evidence tended to show that he received such injuries while attempting to board the train.

Upon the last trial of the case, as upon the first, appellant, at the close of appellee's evidence and again at the

close of all the evidence, requested the court to instruct the jury to find appellant not guilty, and such instructions were refused. The refusal of the court so to instruct was urged by appellant as ground for reversal of the judgment involved in the former appeal and is now again urged on this appeal. On such former appeal this court held there was evidence in the record tending to establish appellee's case and that the trial court committed no error in refusing to give the peremptory instructions asked by appellant. Whether right or wrong, we are bound to recognize our former holding upon that question as *res judicata* on this appeal and the consequent obligation upon the trial court to follow such holding. Wilson v. Carlinville Nat. Bank, 87 Ill. App. 364; Chicago & Alton R. R. Co. v. Kelly, 182 Ill. 267.

The question presented to the trial court upon a motion to direct a verdict is one of law and not of fact. In deciding that question the trial court cannot weigh the evidence and thereby assume to find any fact, but is limited to determining whether there is or is not any competent evidence in the record fairly tending to prove a fact in issue. The power of the Appellate Court, by virtue of section 87 of the Practice Act, is much broader than the power vested in the trial court, and includes the right, upon appeal from the judgment of the trial court, to reverse such judgment without remanding the cause upon the ground that the weight of the evidence did not authorize the verdict. Borg v. C., R. I. & P. Ry. Co., 162 Ill. 348; City of Spring Valley v. Coal Co., 173 Ill. 497; Seeberger v. McCormick, 178 Ill. 404; Davis v. Chicago Edison Co., 195 Ill. 31; Weeks v. C. & N. W. Ry. Co., 198 Ill. 551; Supple v. Agnew, 202 Ill. 351; Trakal v. Heusner Baking Co., 204 Ill. 179.

One of the errors assigned upon this appeal is, that the verdict is contrary to the evidence, and this assignment of error authorizes this court to reverse the judgment without remanding the cause, if upon a consideration of the evidence it shall determine that the weight of the evidence does not authorize the verdict.

That appellant may have been negligent in running either or both of its freight trains in question at a greater speed than was permitted by the city ordinance, or that it may have been guilty of negligence in operating its trains with-' out giving the statutory signals, will not justify a recovery in this case, unless the evidence shows that the injury resulting in the death of appellee's intestate was caused by such negligence. The claim that the deceased was struck by the engine hauling train No. 62, conceded to be the only possible ground of recovery in the case, is predicated solely upon the hypothesis that he was on his way home, several blocks north of the crossing, and in the course of his journey there would necessarily have to cross the tracks of appellant. No eye saw the engine strike the deceased. It was a bright, moonlight night. The engineer and fireman testify they were on the lookout and saw no one at or upon the crossing. Cunningham, on the rear platform of the caboose attached to train No. 54, testifies he saw train No. 62 approaching at a distance of 1,500 feet and gaining upon No. 54; that he watched the train and could see the crossing and saw no one at or upon the crossing. The evidence, however, does not sustain the contention of appellee that the deceased then intended to go home, but rather the contrary, that he intended to go up town. Cunningham testifies deceased said, "Let's go up town;" and again, "Let's go and get that train and go up town," and he further testifies, "and we both started toward the train; I caught it and went up town; when I last saw him he was twenty-five yards away going toward that train." In reply to the suggestion by deceased that they go up town, Cunningham said, "No, I am going home," but the deceased said nothing to indicate a change of his expressed desire to go up town. Furthermore the injury sustained by the deceased was not such as would ordinarily result by contact with the pilot of an engine traveling at the rate of ten to fifteen miles an hour. Beginning at the toes, the foot and leg up to the knee were split or cut open, and no other marks or bruises of any consequence were apparent. The character of the

injury is strongly corroborative of appellant's theory that it resulted from an effort of the deceased to board a train in motion; that in some way his foot slipped between the rail and the revolving wheel.

We are unhesitatingly impelled to the conclusion that the weight of the evidence did not authorize the verdict against appellant and that the judgment should be reversed and the cause not remanded.

*Reversed, with finding of fact.*

Finding of fact, to be incorporated in the judgment of this court:

We find that appellant was guilty of no negligence which contributed to the injury resulting in the death of appellee's intestate.